UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Mark R. Wellman, *et al.*,

    **Plaintiffs,**

v.

PNC Bank, *et al.*,

    **Defendants.**

Case No. 2:11–cv–483

Judge Michael H. Watson

## OPINION AND ORDER

Plaintiffs bring this action under 42 U.S.C. § 1983, asserting Defendants violated their rights to due process and equal protection under the Fourteenth Amendment to the U.S. Constitution by committing various wrongful acts in connection with a state court foreclosure proceeding. This matter is before the Court on Defendants' motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 18, 19, and 20. For the reasons that follow, the Court grants Defendants' motions.

### I. FACTS

The Court derives the following facts from Plaintiffs' complaint.

This case arises from a state court foreclosure action in which Plaintiffs, as mortgagors, were the defendants. Plaintiffs Mark and Gina Wellman ("Plaintiffs" or "Wellmans") are individuals who live in the city of Circleville, which is located in Pickaway County, Ohio. The Wellmans sue PNC Bank ("PNC"), the successor in

interest to the original mortgage holder, Defendant National City Mortgage Company ("NCMC"). Plaintiffs also assert their claims against the Pickaway County, Ohio Common Pleas Judge who presided over the foreclosure action, Hon. P. Randall Knece, as well as four appellate judges who sat on the Ohio Fourth District of Appeals, Hon. Peter B. Abele, Hon. Roger L. Kline, Hon. William H. Harsha[1], and Hon. Matthew W. McFarland. Plaintiffs sue all of the state court judges in both their individual and official capacities. Lastly, Plaintiffs name Pickaway County as a Defendant, arguing the County is responsible for the proper functioning of its courts.

Plaintiffs entered the mortgage agreement with NCMC in May 1994. NCMC filed foreclosure actions against Plaintiffs in the Pickaway County Court of Common Pleas in 1996 and again in March 2002. Judge Knece drew the latter case. The Wellmans and NCMC attempted to enter a Settlement Forbearance Agreement ("SFA"), which was to be signed in early 2003.

In February 2006, NCMC filed a motion in the foreclosure action to enforce the SFA. Judge Knece conducted a fifteen-minute oral hearing, after which it issued an entry granting NCMC's motion and dismissed the Wellmans' counterclaim for fraudulent accounting, without conducting a trial or summary judgment proceedings.

The Wellmans allege that NCMC made several fraudulent representations in connection with its motion to enforce the SFA. First, NCMC submitted to the state court a copy of the SFA which had not been validly executed. In addition, a vice president of NCMC provided an affidavit to the court which did not accurately state the balance for

---

[1] In response to the Defendant Judges' motion for summary judgment, Plaintiffs do not dispute that Judge Harsha did not sit on the panel that affirmed the judgment of foreclosure. The Court therefore dismisses Judge Harsha from this action in his individual and official capacities with prejudice.

the loan and which falsely indicated that the mortgage had only recently been assigned to NCMC's subsidiary, National City Bank, Columbus, when in fact the mortgage had been assigned additional times before the date of the affidavit. Further, the Wellmans maintain they were unaware the balance set forth in the SFA was inflated when they signed it and did not learn it was inflated until 2004.[2] Moreover, the Wellmans aver NCMC was not the mortgage holder when the foreclosure action was filed in March 2002. They allege that NCMC assigned the mortgage in October 1995 and did not obtain reassignment of the mortgage until July 2007. The Wellmans additionally assert that NCMC improperly prepared the assignment to appear as though it was effective in March 2002.

The Wellmans appealed Judge Knece's decision to the Ohio Fourth District Court of Appeals. The appellate court affirmed Judge Knece's judgment.

The Wellmans filed the instant action on June 3, 2011, asserting two claims for relief under 42 U.S.C. § 1983. First, they contend Defendants violated their right to substantive due process under the Fourteenth Amendment to the U.S. Constitution. Second, the Wellmans maintain Defendants violated their Fourteenth Amendment right to equal protection of the law.

## II. MOTION TO DISMISS

A claim survives a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The

---

[2]Hence, Plaintiffs acknowledge they signed the SFA. *See* Compl. ¶ 6[(]c), ECF No. 2.

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal citations omitted).

A court must also "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). In doing so, however, plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[A] naked assertion . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility . . . ." *Twombly*, 550 U.S. at 557. Thus, "something beyond the mere possibility of [relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 557–58 (internal citations omitted).

### III. DISCUSSION

This case entails three categories of Defendants: (1) PNC; (2) the state court judges; and (3) Pickaway County. Each category moves separately to dismiss the Wellmans' complaint for failure to state a claim upon which relief may be granted. The

three motions assert different grounds for dismissal tailored to each category. For example, PNC argues for dismissal of the Wellmans' claims on the ground that PNC was not a state actor, and therefore cannot be held liable under § 1983. The state court judges contend the Wellmans' claims are barred by the applicable statute of limitations and the doctrines of collateral estoppel and absolute judicial immunity. Pickaway County maintains the Wellmans fail to plead that the County engaged in any wrongdoing. In addition to those tailored arguments, all Defendants move to dismiss under the *Rooker-Feldman* doctrine. The Court will first examine that ground for dismissal.

## A. *Rooker-Feldman*

The *Rooker-Feldman* doctrine is derived from two U.S. Supreme Court decisions which held that federal district courts lack jurisdiction to directly review state court judgments. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983). Rather, only the U.S. Supreme Court has jurisdiction to review state court decisions pursuant to 28 U.S.C. § 1257. *Rooker*, 263 U.S. at 416. In 2005, the U.S. Supreme Court clarified the scope of the *Rooker-Feldman* doctrine:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005). Under *Exxon*, whether *Rooker-Feldman* applies depends on the source of the plaintiff's injury. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). "If the source of the injury

is the state court decision, then the Rooker-Feldman doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id.*

Applying the source of injury test, courts in the Sixth Circuit have held "'*Rooker-Feldman* does not bar a federal-court challenge to an individual's improper conduct during a prior state court proceeding.'" *Hammond v. Citybank, N.A.*, No. 2:10–cv–1071, 2011 WL 4484416, at *3 (S.D. Ohio Sept. 27, 2011) (quoting *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 241 F. App'x 285, 288 (6th Cir. 2007)). In *Hammond*, the plaintiff asserted his injury arose from alleged fraud perpetrated in a state court foreclosure proceeding by the filing of a false affidavit but did not oppose the state court judgment itself. The court in *Hammond* held that because the fraudulent affidavit was the source of the plaintiff's injury, *Rooker-Feldman* was inapplicable, notwithstanding that the validity of the state court judgment and the alleged fraudulent nature of the affidavit were intertwined. *Hammond*, 2011 WL 4484416, at *4–5; *see also Brown v. First Nationwide Mortgage Co.*, 206 F. App'x 436, 440 (6th Cir. 2006) (claim that foreclosure decree was obtained through fraud not barred by *Rooker-Feldman*); *Fletcher v. Federal Nat'l Mortg. Ass'n*, No. 3:11–cv–83, 2011 WL 5175611, at *3–4 (S.D. Ohio Oct. 4, 2011) (*Rooker-Feldmen* did not preclude action complaining that foreclosure was procured with false affidavits and party seeking foreclosure failed to demonstrate standing).

Here, as in *Hammond*, *Brown*, and *Fletcher*, the Wellmans assert that NCMC obtained the foreclosure judgment with a fraudulent affidavit. In addition, like the

plaintiffs in *Fletcher*, the Wellmans contend NCMC was not the mortgage holder when the foreclosure action was filed, which suggests NCMC lacked standing. In short, the Wellmans allege harm from wrongdoing independent of the state court judgment. Consequently, *Rooker-Feldman* does not bar the Wellmans' claims.

The above conclusion does not end the inquiry, however, as each category of Defendants asserts other grounds for dismissal. First, PNC argues the Wellman's § 1983 claims against it fail because PNC is not a state actor.

## B. PNC not a state actor for purposes of § 1983

All of the Wellmans' claims are brought under 42 U.S.C. § 1983 for alleged violation of the Wellmans' constitutional rights. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . .

42 U.S.C. § 1983. To prevail in a § 1983 action, the plaintiff must prove: (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of state law. *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) (internal quotation marks and citation omitted). Section 1983 is not intended as a method for suit against a private party "'no matter how discriminatory or wrongful the party's conduct.'" *Cramer v. City of Detroit*, 267 F. App'x 425, 427 (6th Cir. 2008) (internal citations omitted). By their actions, however, private parties can become state actors for purposes of liability under § 1983. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *Revis v. Meldrum*, 489

F.3d 273 (6th Cir. 2007).

> The Supreme Court has established four tests for determining whether the challenged conduct may be fairly attributable to the State for purposes of a § 1983 claim. These are (1) the public function test; (2) the state compulsion test; (3) the symbiotic relationship or nexus test; and (4) the entwinement test. *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992); *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 298 (2001) (citations omitted). The public function test requires that the private entity exercise powers that are traditionally exclusively reserved to the State, such as holding elections, *Flagg Bros. v. Brooks*, 436 U.S. 149, 157 (1978), or exercising the power of eminent domain. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353 (1974). The state compulsion test requires that a State has "exercised such coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the State responsible for those initiatives. *Id.* Under the symbiotic relationship or nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. *See Jackson*, 419 U.S. at 357–58; *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 724–25 (1961). The entwinement test requires that the private entity be "entwined with governmental policies" or that the government be "entwined in [the private entity's] management or control." *Brentwood*, 531 U.S. at 296 (citing *Evans v. Newton*, 382 U.S. 296, 299 (1966)). The crucial inquiry under the entwinement test is whether the "nominally private character" of the private entity "is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings [such that] there is no substantial reason to claim unfairness in applying constitutional standards to it." *Id.* at 298. The fact that a public entity has acted in compliance with a private entity's recommendations does not transform the private entity into a state actor. *Nat" Collegiate Athletic Ass'v. Tarkanian*, 488 U.S. 179 (1988).

*Vistein v. Am. Registry of Radiologic Technologists*, 342 F. App'x 113, 127–28 (6th Cir. 2009). The Wellmans do not cogently attempt to demonstrate that PNC was a state actor under any of the four tests identified above, and the facts set forth in their complaint, even liberally construed, fall far short of meeting any of the tests. Rather, the Wellmans argue PNC may be held liable under § 1983 under a conspiracy theory.

In support of that proposition, the Wellmans rely on *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998). The *Fries* decision does not help the Wellmans. That court stated:

> Although Fries correctly restated the Court's conclusion that, generally, private individuals act under color of law when jointly acting with a state official to deprive some person of his constitutional right, see *Dennis*, 449 U.S. at 27–28, he failed to mention the Supreme Court's remark immediately following: "[o]f course, merely . . . being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Id.* In an attempt to state a claim for relief under § 1983, Fries included only accusations and conclusory allegations that the defendants conspired with Judge Kinney and influenced his decisions. As the district court articulated in its opinion, mere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss.

*Id.* at 457–58. Here, the Wellmans have not pleaded the existence of a conspiracy even in a conclusory fashion. Consequently, there is no basis to conclude that PNC may be held liable under § 1983 on the basis of conspiracy. Because PNC was not a state actor, it is entitled to dismissal of the Wellmans' § 1983 claims against it.

## C. State court judges are absolutely immune

The state judges assert they are absolutely immune from suit. The Wellmans contend absolute judicial immunity does not apply because the judges acted in the absence of jurisdiction.

"'It is well established that judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of any jurisdiction.'" *Hanner v. City of Dearborn Heights*, No. 09-1418, 2011 WL 5839648, at *4 (6th Cir. Nov. 22, 2011) (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir.1994)). "'A judge acts in the complete absence of all jurisdiction only if a matter was clearly outside the court's

subject matter jurisdiction.'" *Marshall v. Bowles*, 92 F. App'x 283, 285 (6th Cir. 2004) (quoting *King v. Love*, 766 F.2d 962, 966 (6th Cir.1985)).

The Wellmans argue the state court judges acted in the absence of jurisdiction because NCMC lacked standing to bring the state foreclosure action, thereby rendering the action void *ab initio*. The state court judges maintain the Wellmans misapprehend the concept of acting in the *complete* absence of *any* jurisdiction. The Court agrees. Assuming *arguendo* that NCMC was not the mortgage holder and therefore did not have standing to bring the foreclosure action, the state court judges did not act in the complete absence of any jurisdiction. For example, the state court judges had jurisdiction over the foreclosure action to determine the very issue whether NCMC lacked standing.

In a broader sense, Ohio Common Pleas Courts have original jurisdiction over "all civil actions" involving matters valued over a jurisdictional minimum. Ohio Rev. Code § 2305.01; *see also* Ohio Const. Art. 4, § 4.04(B). That grant of general jurisdiction includes foreclosure actions. *Phillips v. Eyster*, No. 11-CA-15, 2011 WL 5027064, at *1 (Ohio Ct. App. 5 Dist. Oct. 20, 2011). Moreover, lack of standing of the original foreclosure plaintiff does not deprive the Common Pleas Court of subject matter jurisdiction over the action. *Washington Mut. Bank, F.A. v. Wallace*, 194 Ohio App.3d 549, ¶¶ 41, 44 (2011). Similarly, the Ohio appellate courts have jurisdiction over appeals from Ohio's inferior courts. Ohio Rev. Code § 2501.02; Ohio Const. Art. 4, § 4.03(B)(2). Hence, this is not a case where, for example, a probate court, with jurisdiction confined to only wills and estates, undertook the trial of a criminal case. In that instance, the probate court may properly be deemed to have acted in complete

absence of any jurisdiction. See *Ireland v. Tunis*, 893 F. Supp. 724, 729 (E.D. Mich. 1995) (citing *Bradley v. Fisher*, 80 U.S. 335, 352 (1872)). In the instant case, however, it cannot fairly be said that the state court judges acted in the complete absence of any jurisdiction. For that reason, the state court judges are entitled to absolute judicial immunity, and the Court therefore grants their motion to dismiss.

## D. Pickaway County not liable for actions of state court judges

Lastly, Pickaway County moves to dismiss on the ground that it is not responsible for the actions of the state court judges. The Wellmans argue Pickaway County may be held liable for the judges' alleged unconstitutional actions because the judges were acting pursuant to official policies of the County.

The Wellmans are apparently attempting to invoke the concept of municipal liability under *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1971). Under *Monell* and progeny, a local government can be held liable for the unconstitutional conduct of its employee only if the employee was acting pursuant to an official policy of the local government. *Id.* at 694–95. The Wellmans' argument fails for two reasons. First, they fail to identify any official policy of the County underlying the judges' actions. Second, the argument fails to comprehend that state court judges are not employees of the County, such as county sheriffs, in the sense required for *Monell* liability. Rather, the state court judges are members of an independent branch of the Ohio government, and the County and its Commissioners have no legal authority to direct the state judges' judicial decisions. *See* Ohio Const. Art. 4, § 4.01. For these reasons, the Wellmans' claims against Pickaway County fail as a matter of law.

## IV. DISPOSITION

Based on the above, the Court **GRANTS** the motions to dismiss of all Defendants.

The Clerk shall enter final judgment in favor of Defendants, and against Plaintiffs, dismissing this action in its entirety with prejudice.

The Clerk shall remove ECF Nos. 18, 19, and 20 from the Civil Justice Reform Act motions report.

**IT IS SO ORDERED.**

/s/ Michael H. Watson
**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**